**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

STEVEN KALCH,

    Plaintiff,

v.                                             Case No: 6:16-cv-1529-Orl-40KRS

RAYTHEON TECHNICAL SERVICES COMPANY, LLC and RAYTHEON COMPANY,

    Defendants.

## ORDER

This cause comes before the Court without oral argument on Defendant's Motion for Dismissal or Other Sanctions Resulting from Plaintiff's Perjury and Misconduct (Doc. 68), filed April 10, 2017. On April 24, 2017, Plaintiff responded in opposition. (Doc. 70). Upon consideration, Defendant's motion will be denied.

**I.  BACKGROUND**

Plaintiff, Steven Kalch ("Kalch"), worked for Defendants, Raytheon Technical Services Company, LLC and Raytheon Company (collectively, "Raytheon"), under a contract with the United States Army in Afghanistan. During his employment, Kalch claims that he witnessed numerous instances of fraud and abuse, and he reported the same to his supervisors. Kalch's employment with Raytheon was terminated on January 17, 2014, and Kalch believes that his employment was terminated due to his reports of fraud and abuse. Kalch therefore initiated this lawsuit against Raytheon for retaliation under the False Claims Act and for wrongful termination under Missouri state law.

1

During the course of discovery, Raytheon sought the disclosure of a "timeline" Kalch identified in response to a request for production, but claimed was privileged. Kalch specifically withheld production of the timeline based on his assertion of the attorney-client privilege. After Raytheon filed a motion to compel production of the timeline, the presiding Magistrate Judge ordered Kalch to produce a privilege log justifying his assertion of the attorney-client privilege. On March 24, 2017, Kalch provided the privilege log along with his sworn affidavit explaining how, when, and why he prepared the timeline. In his affidavit, Kalch affirmed, "I did not provide the timeline to any other person." Kalch re-affirmed this statement during his deposition on March 29, 2017. However, at the very end of the deposition, Kalch waived his claim of privilege.

Raytheon now asks the Court to dismiss this action with prejudice pursuant to its inherent powers as a sanction for what it contends is Kalch's misconduct and perjury. Raytheon takes the position that "[Kalch] has known all along that the 'timeline' was not privileged," and therefore intentionally asserted a false claim of attorney-client privilege in order to withhold the timeline from Raytheon and hinder its defense. Raytheon maintains that Kalch in fact provided the timeline to his supervisors in Afghanistan when he first made his reports of fraud and abuse, thus waiving any claim to the attorney-client privilege long ago. Since Kalch knew that he had previously produced the timeline to others, Raytheon concludes that Kalch engaged in litigation misconduct by asserting the attorney-client privilege and perjured himself in both his sworn affidavit and at his deposition when he insisted that he had never given the timeline to anyone else.

**II.     DISCUSSION**

Federal courts have the inherent power to sanction parties and attorneys who abuse the judicial process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991). "The key to unlocking a court's inherent power is a finding of bad faith," which requires direct evidence that the party or attorney accused of the misconduct acted with the subjective intent to abuse the judicial process. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223–24 (11th Cir. 2017). "[I]n the absence of direct evidence of subjective bad faith, this standard can be met if [the] conduct is so egregious that it could only be committed in bad faith." *Id.* at 1224–25. "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44.

The Court has reviewed the evidence submitted by Raytheon and Kalch and finds that neither Kalch nor his counsel engaged in misconduct, let alone bad faith misconduct, when they asserted the attorney-client privilege with respect to the timeline at issue. To the contrary, the Court finds that Kalch's assertion of the privilege was entirely permissible, as the situation is more nuanced than Raytheon posits. Indeed, Kalch created two timelines: one timeline while he was in Afghanistan which he ultimately gave to Raytheon's Deputy Program Manager, Vince Hosch, and another timeline afterward which he provided to his attorneys. As Kalch explained at a June 10, 2015 interview with the Department of Defense:

> Q. And also he mentions here that "He had a journal." Do you know who is the person that has a journal?
>
> A. Me. I gave them the journal.
>
> Q. What journal? Is this the same timeline that I have?

3

>	A.	Correct.
>
>	Q.	Okay. Is there another journal other than this?
>
>	A.	No. Well, you know, I gave him, I had to. I kept most of it, you know, because I gave it to him. And then when they removed my computer access, so when I came back I had to refill my timeline. The timeline is pretty well exact to what I gave him. I can't say it's exactly because I gave him a timeline and they took my computer away from me without me being able to do anything. They showed up one day.
>
>	So the timelines are pretty well close. I can't say that they're 100 percent perfect. But I gave him a journal. That's why he's mentioning that. I gave him a journal.
>
>	Q.	You gave Mr. Hosch the journal?
>
>	A.	That's correct.

(Doc. 68-9, 76:21–77:17).

In short, Kalch attempted to recreate the timeline he gave to Hosch so that he could provide it to his attorneys for purposes of legal representation. In response to Raytheon's request that Kalch produce this second timeline, Kalch objected and stated, "Plaintiff created a timeline for communication with his attorney and this document is protected by the attorney-client privilege." (Doc. 68-4, p. 3). At the direction of the Magistrate Judge, Kalch subsequently produced a privilege log and a sworn affidavit detailing his assertion of the privilege. In these documents, Kalch confirms that he created the second timeline after his termination in order to provide information to his attorneys about this case. (Docs. 68-2, 68-3). Based on the evidence provided, this is a proper invocation of the attorney-client privilege under Florida law. See Fla. Stat. § 90.502. The fact that the two timelines might be similar, even significantly so, does not change that Kalch created the second timeline for his attorneys for the purpose of legal

4

representation. Additionally, there is no evidence in the record indicating that Kalch waived his attorney-client privilege until the end of his March 29, 2017 deposition. The Court therefore finds that neither Kalch nor his counsel engaged in misconduct when they repeatedly invoked the attorney-client privilege with respect to the second timeline.

To the extent Raytheon would have the Court sanction Kalch for not producing the first timeline he gave to Hosch while in Afghanistan, there is no basis for such a sanction. As Kalch testified in his interview with the Department of Defense, he could no longer access the first timeline after he gave it to Hosch, and that timeline remained in the Department of Defense's possession until Raytheon requested the timeline from the Department of Defense earlier this year. Moreover, Kalch did not object to the Department of Defense producing the first timeline to Raytheon, and Raytheon has been in possession of the timeline ever since. These circumstances again do not amount to misconduct warranting the imposition of sanctions.

### III.   CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Dismissal or Other Sanctions Resulting from Plaintiff's Perjury and Misconduct (Doc. 68) is **DENIED**. Defendant's Motion for Leave to File Reply (Doc. 73) is **DENIED AS MOOT**.

**DONE AND ORDERED** in Orlando, Florida on July 20, 2017.

*[Signature]*

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record